## STAMP v. FRANKLIN.

*(Supreme Court, General Term, Fifth Department. January 24, 1891.)*

HUSBAND AND WIFE—EARNINGS OF WIFE.

In an action by a married woman for services rendered, and for board furnished, defendant's testatrix, while plaintiff and her husband were living together, no recovery can be had for the value of the provisions furnished, in the absence of evidence that they were furnished by plaintiff, as the presumption is that they were furnished by the husband; but she may recover for the value of her services, under Laws N. Y. 1860, c. 90, § 2, which provides that "the earnings of any married woman * * * shall be her sole and separate property."

Appeal from judgment on report of referee.

Action by Edna O. Stamp against Augustus W. W. Franklin, as executor of Martha W. Douglass, deceased. There was a judgment for plaintiff, and defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*John H. Johnson*, for appellant.   *M. A. Leary*, for respondent.

CORLETT, J.   This action was brought to recover the value of services in taking care of and nursing the testatrix, and for boarding and furnishing her with supplies, from December 5, 1884, until her death, the 10th of January, 1889; and also for some services and expenditures before that time.   The complaint alleges that there was an agreement made between the plaintiff and her husband, before any services were rendered or board furnished, that she should have whatever she earned as her sole and separate estate.   The answer put in issue the plaintiff's claim.   The cause was referred.   The referee reported in favor of the plaintiff, $2,631.05, for which judgment was entered, and the defendant appealed to this court.   The testatrix was a widow of the age of about 77 years, leaving no descendants.   She was the plaintiff's aunt, and owned a house and lot in the village of Penn Yan, of the value of about $3,500, and left personal property to the amount of $1,000.   For many years she had lived alone in a part of the house; sometimes renting the portion not occupied by her.   The plaintiff and her husband lived with her about two years, commencing in 1880, and then moved away.   Between April 7, 1883, and November 5, 1884, the plaintiff rendered certain services for the deceased, and also supplied her with some provisions.   About the date last named the plaintiff claims that an agreement was made between them whereby she was to move back into the house, and board the testatrix for 25 cents a meal, and give her such care and attention as her condition required, in consideration of which she was to receive the dwelling-house or its value.   The plaintiff claims that, in pursuance of this arrangement, she and her husband moved into the house of the deceased, who boarded with her until her death, and that she bestowed upon her much care and attention.   The evidence on the part of the plaintiff tended to show that the testatrix was in feeble health, and needed much care and nursing, and that early in November, 1886, she became seriously ill, and was cared for by the plaintiff, and such additional help as her necessity required; that she partially recovered, but remained feeble until her death, which occurred on the 10th day of January, 1889.   The plaintiff's evidence tended further to show that her services were worth all she charged.   The defendant's evidence tended to show that the testatrix needed no attention.   The leading controversy on the trial related to questions of fact.

In June, 1890, the referee made his report, in which he finds as follows: "*First.* That one Martha W. Douglass was a resident of the village of Penn Yan, N. Y., for many years, where she died, January 10, 1889, aged about 77 years, and leaving a last will and testament, which has been fully proved, and of which defendant is executor.   That she was an unmarried person, without descendants, and owning a house and lot on Main street, in said village, worth $3,500.00; also personal property estimated worth $1,000.00.   That she resided in said house during the last ten years of her life, and prior thereto, and was a feeble woman, and more or less diseased, having asthma and cough, attended with expectoration, and needed the care and attention of others.   That the plaintiff and her family resided with said Martha W. Douglass for the period of about two years, beginning some time in 1880.   *Second.* That after the plaintiff and her family removed from said house, and during the time commencing April 7, 1883, the plaintiff, at decedent's request, performed labor and service for said decedent one day in each week, until November 5, 1884, and also furnished her supplies for her table.   That said services were worth $94.00, and said supplies $3.55.   *Third.* That on

said 5th day of November, 1884, the plaintiff and her family again removed to the decedent's house, and remained there until decedent's death; and the decedent resided with the plaintiff in said house as a member of her family, and was boarded and nursed and attended by the plaintiff, during said period, under the contract hereinafter set forth. That said nursing, attendance, and other services rendered by the plaintiff for the decedent were worth 25 cents per day, from said November 5 to September 8, 1886, or $186.25. That the decedent, on said September 8th, was seized with a more acute and more severe disease or form of disease, which lasted for several weeks, and she was always subsequently more feeble, and required more service rendered by the plaintiff than had been previously needed. That said nursing, attendance, and other services, from September 8, 1886, to January 10, 1889, were worth $10.00 per week, or $1,220.00. *Fourth.* That the contract under which said plaintiff furnished said board and rendered said services to decedent was made on or about the 5th day of November, 1884, and thereby the plaintiff and said decedent agreed as follows: That in consideration of the plaintiff removing with her family to said house, and taking care of decedent for her natural life, she should pay the plaintiff for her board 25 cents per meal, or 75 cents a day, and would also give her said house and lot, or the value of it, for her services. That the plaintiff, in consideration of the said agreement of decedent, promised to remove to said house, and board and take care of decedent, on said terms, and that she did so remove, and boarded decedent and took care of her until her said decease, January 10, 1889. That the board of said decedent during said period amounted, at 75 cents per day, to $1,145.25. *Fifth.* That George Stamp, the husband of the plaintiff, prior to 1883, entered into an agreement with her by which she was to receive and own all compensation for any service she might render to other persons, and that this agreement was made known to the decedent at the time of said contract. *Sixth.* That the decedent never gave the said house and lot, either by deed or devise, or in any other manner; nor did she ever pay the plaintiff for said board, nursing, attendance, and the other services, or any part thereof. On the foregoing facts, I find the following conclusions of law: *First.* That the defendant, as executor of the last will and testament of Martha W. Douglass, deceased, is indebted to the plaintiff as follows: For services rendered prior to November 5, 1884, $94.00; and for supplies furnished during the same time, $3.55; and for services rendered from November 5, 1884, to September 8, 1886, $168.25; and from September 8, 1886, to January 10, 1889, $1,220.00; and for board from November 5, 1884, to January 10, 1889, $1,-145.25,—amounting in all to $2,631.05, for which sum the plaintiff is entitled to judgment."

It will be noticed from this report that between April 7, 1883, and the 5th day of November, 1884, the plaintiff furnished the deceased supplies of the value of $3.55, and rendered services worth $94; that from the last date until the 8th day of December, 1886, the plaintiff's nursing and services were worth $168.25, and from that time until her death, $1,220; that the board of the testatrix from the 5th day of November, 1884, until her death, at the rate of 25 cents per meal, was $1,145.25,—amounting in the aggregate to $2,631.05, for which judgment was ordered and entered. The learned counsel for the appellant comes here with two contentions: One that the referee's report was not warranted by the evidence, claiming that the plaintiff's husband was thoroughly impeached; also that, by his own showing, his testimony was false and unworthy of credit. The other, that the referee fell into errors in the admission and rejection of evidence. The evidence of the plaintiff's husband, appearing in the appeal papers, is certainly not satisfactory. Aside from the suspicion cast upon his testimony by impeaching witnesses, and seemingly inconsistent statements, an inspection of the book, Exhibit A, put in evidence by the defendant, shows with reasonable certainty that all the entries were

made in the same ink, and about the same time, instead of at different times from May 30, 1879, until the death of the testatrix, as the dates on his book and his testimony indicate. It is true that all this evidence was before the referee, who, notwithstanding the suspicious circumstances above referred to, found in the manner shown by his report. How far or to what extent the referee credited the husband's evidence does not appear; but it is fair to assume he attached some importance to it. There is other evidence in the case tending to show that the plaintiff's services were worth all she charged, and that she cared for the deceased during the time alleged. The plaintiff's husband had given evidence tending to show that, by an arrangement with her, she was to have her earnings as her sole and separate property. Section 2, c. 90, of the Session Laws of 1860, regulating the rights and liabilities of married women, provides, among other things, as follows: "A married woman may bargain, sell, assign, and transfer her separate personal property, and carry on any trade or business, and perform any labor or services on her sole and separate account; and the earnings of any married woman from her trade, business, labor, or services shall be her sole and separate property, and may be used or invested by her in her own name." In *Brooks* v. *Schwerin*, 54 N. Y. 343–348, the court held that, when a married woman labors for another, her services no longer belong to her husband, and that whatever she earns is her property, the same as if she was unmarried. In this case the services were rendered for the testatrix. This sufficiently appears without regard to the testimony of the husband. It does not clearly appear who furnished or paid for the provisions used to board the testatrix or the plaintiff or her husband; nor was any distinct question raised upon that branch of the case by the learned counsel for the defendant. The plaintiff's right to recover for her services was not derived from her husband, but belonged to her by virtue of the statute. Her right to recover accrued the same as if she was unmarried. The case shows some exceptions to the admission of evidence on the subject of the value of the plaintiff's services; but the witnesses showed themselves to be sufficiently competent to speak on that question. The defendant also offered the will in evidence, which was excluded, and exception taken. The case does not show in what respect the will would have been competent. It did not appear on the trial that any of its provisions were material on the questions involved in the issue. In the case at bar the evidence tended to show, and the referee finds, that the plaintiff's services were of the value of $1,482.25. This value was shown before the referee by competent evidence, aside from that of the husband. In the absence of proof, the presumption would be, when the husband and wife were living together, that he furnished the provisions. The duty of supporting the family devolves upon him. Under such circumstances the amount allowed for board or provisions is not warranted by the evidence. That sum should be deducted from the judgment, which should be reduced to the value of the services found by the referee, including interest from the date of his report. If the plaintiff stipulates to deduct that sum ($1,148.40) from the judgment, it should be affirmed, without costs of the appeal to either party; otherwise, reversed, and a new trial granted, with costs to abide the event. All concur.